I'm Scott Watson. I'm here today on behalf of the FDIC as the receiver for the failed First Heritage Bank. And with the court's permission, I'd like to request three minutes of rebuttal. You just watched the clock. Understood. Thank you, Your Honor. During my argument, I would like to focus on two main points. The first is that the plain language, the statutory context, the statutory purpose behind FIREA and specifically behind D-2G all support FDIC's interpretation and require reversal of the district court. And the second is that that application is neither unfair nor unconstitutional. Turning to the language of the statute, which I'll call D-2G with your permission, the district court's distinction between a statutory transfer restriction and contractual restrictions can't be supported by the language. D-2G is unequivocal and expansive. It says that the FDIC may transfer any asset without any approval, assignment, or consent.  How can a statute overcome the burden that the asset inherently contains? I have two answers to that, Your Honor. The first is that as the cases that we've cited make clear, the Norman case, dating back to 1911, the Louisville case, and the Norman case in 1935 and subsequent cases, the Supreme Court's explained that parties can't, by contract, take to themselves appropriate exercise of the legislative power. It's clear that Congress has the power to legislate the manner by which the FDIC will resolve failed banks. And so it has provided in a number of places by statute. Counsel, that's an extraordinarily broad proposition. Of course parties can assume to themselves powers that may belong to the legislature. We do it all the time through common law contracts. And the legislature may come in later on and decide to undo those contracts, but there are consequences, there are constitutional consequences if the legislature decides to come in and undo them. There aren't always constitutional consequences, Your Honor. That's right. There are not always constitutional consequences, but there are constitutional consequences in some cases. In some cases, that's correct. But I'd like to point the Court, if I can, to at least eight statutory provisions where the FDIC can affect or avoid contractual provisions. And we cited some of them in our brief. The FDIC has the power to avoid default or acceleration provisions. That's in 1821E13. The First Circuit in the McAndrews case that we've cited explained why that's a proper exercise of the FDIC's powers and why it does not give rise to constitutional concerns. If you'd like, I can address that constitutional analysis first, but I can also point out that the FDIC has the power to avoid contracts that aren't properly written, maintained, or approved. And is that in E as well, 1821E? The power to avoid default or acceleration provisions is in 1821E13. Okay. The power to avoid contracts that aren't written, maintained, or approved is in 1823E. Okay. Do you have any authority for it? Does the FDIC claim any authority for what it did here in 1821E? Does it claim authority? No. The authority provided to the FDIC is in D2G. That's correct, Your Honor. So here's my question. So you look at 1821. And in 1821E, we have all of this authority that is very explicit authority as to what the FDIC can do with respect to contracts. So, for example, E1 is the authority to repudiate contracts, and it tells courts what the FDIC does if it repudiates and that it's going to be liable for certain damages, but that it will not be liable for other kinds of damages. Now, you go through all the lists there in E, and you see that the FDIC is given very specific authority to do certain things with respect to assets that have a contractual restriction on them. But nothing in E would authorize what the FDIC has done here. Since Congress was quite specific in what the FDIC is permitted to do in E, but it didn't authorize this, how is it that you get to go to D2G and claim authority there for something that's very different from what's allowed in E, particularly when E1 says, if you're going to repudiate a contract, the FDIC is going to pay damages? The FDIC did not need to repudiate the contract here, Your Honor, and it's a flawed premise to suppose that there was ever It just breached it. It didn't because there was never, respectfully, there was never an enforceable contract right on the part of PBB, the maker of that contract, to in any way restrict the transfer by the FDIC as receiver. This statute was passed in 1989. It was almost 20 years before PBB entered into its contract, which had a transfer restriction that may have been enforceable against the private party. That means that every contract that any bank enters into must come with an automatic exception clause that says, of course, nothing that we've said here is of any value to us if one of the parties fails and the FDIC is appointed as a receiver. Actually, Your Honor, every contract that's written has the existing law at the time written in as a part of it. The Supreme Court cases we cited make that clear. It wasn't necessary for the statute to be more clear because it said the FDIC can make those transfers without any approval, assignment, or consent, and that had been the law for over 15 years when that contract was entered into. And as I said, the Connolly case from the Supreme Court makes clear that when you enter into that contract, it's subject to the existing law at that time. They didn't have an enforceable contractual provision just as, and this Court has certainly enforced Section 1823E repeatedly, as has the Supreme Court. You might have an enforceable written contract signed by a bank president that was enforceable against the bank while it was open, but upon the failure of the institution, that contract is unenforceable against the FDIC unless it meets certain demanding recording restrictions. Those contracts simply aren't enforceable from the outset. At the time the party entered into the contract, because the FDIC had already been authorized, in this case, to transfer without restriction, in the case of 1823E, that provision is rendered unenforceable against the FDIC. Counsel, what about the elephant in the room, Sharp v. FDIC? And I'm quoting, Ferreira does not preempt state law so as to abrogate state law contract rights. Ferreira does not permit the FDIC to breach contracts at will. Ninth Circuit opinion. Respectfully, Your Honor, it's a Ninth Circuit opinion that does not have application here. Why? For a couple of reasons. First of all, Sharp was not in any way interpreting 1821D2G, and that general pronouncement in isolation might sound right. But it was interpreting 1821E. It was actually interpreting 1821 – it was strictly looking at the withdrawal of the court's jurisdiction under Section 1821J and under 1821D13D. The actual holding in the case was that there was no withdrawal of jurisdiction because the particular breach of contract by the FDIC there could not render the Sharps creditors of the failed institution. It's a very limited opinion. But we cited Waterview, and Waterview looks to be even more on point than Sharp. And Waterview, Your Honor, makes a fundamental mistake. It says from the outset that the FDIC can't have greater rights than the bank, and it cites O'Melveny for that proposition. And just as the Bank of Manhattan does, it omits the most important part of the Supreme Court's announcement, which is except where otherwise provided in the extensive statutory structure, the FDIC will stand in the shoes of the failed institution. But D2G has that effect of providing for the transfer. I understand that you think that the D.C. Circuit may be wrong. Now, that decision's been around for a while. But in Sharp, we adopted the views of Waterview. So doesn't that make Waterview our case at this point? No, Your Honor. I think this Court's case on point is the Sonny case in which this Court looked at 1821D2G. Admittedly, it looked at 1821D2G in the context of a statutory restriction, but it made no distinction between statutory restrictions and contractual restrictions. But doesn't Sharp eclipse Sonny?  Your Honor, in fact, Sharp has been limited by this Court in at least two decisions. And in the most recent decision that was issued just this year, the Deutsche Bank decision from this circuit, this circuit said that in an earlier decision, the McCarthy decision, this Court had declined to extend Sharp beyond its unusual facts, and that it would certainly be inappropriate to extend it beyond its unusual facts on a statute that it never addressed. But the Court has addressed 1821D2G in the Sonny decision, admitted of no distinction because the statutory language won't tolerate such a distinction, and it cited with favor two district court decisions that had applied 1821D2G to bar contractual restrictions. And those two cases were cited by the Ninth Circuit with favor in concluding, as it said in its language, that the statute bars any provision that would require approval, assignment, or consent. So this Court had occasion to visit 1821D2G and viewed it just as broadly as its language suggests. As I've said, there was no breach here because Professional Business Bank was unable to contract for a transfer restriction that was enforceable against the FDIC. The Norman decision explained that you can't remove your transactions from the reach of a statute by contract. Connolly made the same conclusion. The Supreme Court explained that the existence of the contract could not defeat the broad grant of authority that Congress had given in using the words any, in that case that there would not be any impediment to the proposed transaction. As the Supreme Court explained, it would render congressional purposes of no avail if parties could enter into contracts that were contrary to the statute. And because they couldn't effectively make a contract, it doesn't give rise to any damages. Louisville, as early as 1911, the Supreme Court recognized that. It would be one thing if they said, and notwithstanding anything in FERIA, the parties agreed to the following. Or if they'd put a contract in that says, of course, if the FDIC assumes control over one of the parties, we don't, the other side waives whatever remedies they have under FERIA. That would be one thing. But these parties, of course, have simply contracted with each other under ordinary principles. With all due respect, I think that gets it backwards. That would place the burden on the contracting, or place the power within the contracting party to accept itself from the coverage of statute. While in this case, the statute actually has that effect. And as the McAndrews case made clear, there isn't a constitutional concern here for three reasons. It applied the three-prong test for determining whether there'd been a takeover. Mr. Counsel, you're down to two minutes. I see, Your Honor. I'll take 30 seconds of those. In this case, this statute is adjusting the economic burdens and benefits of commerce, and that's well within Congress's power. The bundle of rights taken here is a very small portion of the bundle of rights. These banks were still able to do what the contract called for, which was to get the interest payments on a loan in a loan participation. And finally, there were no reasonable expectations because when PBB entered into this contract, 1821 D2G had been the law for 15 years. I'll reserve for rebuttal. Thank you, Your Honor. Thank you, Counsel. We'll hear from the Bank of Manhattan. May it please the Court, Richard Esterkin, Morgan Lewis, and Bacchius on behalf of the Bank of Manhattan. Your Honor, first I'd like to make just one point about Counsel's argument, which is the argument that somehow the statute is incorporated into the contract is circular because it assumes the FDIC's interpretation of the statute is correct. Counsel, could you speak a little louder, please? I'd appreciate it. I'm sorry. I'm a little bit far from the microphones. The argument that Counsel made about the statute being incorporated into the contract is, of course, a circular argument because it assumes that the FDIC's interpretation of the statute is correct. It doesn't answer the question of what does the statute really mean. Well, regardless of whether the interpretation of the statute is correct or not, isn't it true that contracts do have to be in compliance with the law? Of course. Okay. And the question of what does the statute mean is, in fact, the issue that's before the Court. In our view, there's three potential answers to that question. First, all rights of first refusal are validated. Secondly, all rights of first refusal are valid. Or third, there should be some sort of balancing test which looks at the degree to which the right of first refusal impairs the ability of the FDIC to transfer the asset. So how does the language of the statute fit into your theories of how the alternative ways the statute should be interpreted? Because the language of the statute is very broad. Yes, Your Honor. In our view, the purpose of the statute is to assure that the FDIC does not wind up with an asset from a failed bank that it simply can't sell. But what do we do with the plain meaning of the words that are in the statute? Well, the plain meaning of the words in the statute, and the statute says that the FDIC can sell without any approval, assignment, or consent with respect to the transfer. And a right of first refusal is not a right to approve, assign, or consent to a transfer. Because if the FDIC is successful in negotiating sale of the asset, and then it tenders the sale to the party holding the right of first refusal, there are two possible outcomes. One is the holder of the right will exercise the right of first refusal, and the FDIC will receive its bargain for consideration for the asset, not from the party with whom it originally bargained, but from the holder of the right of first refusal. So your argument is that a right of first refusal does not even come within the language of the statute? Yes, Your Honor. The other possibility is that the holder of the right of first refusal will refuse to exercise the right of first refusal, and the sale to the original purchaser will go through. In either case, the FDIC has been allowed to monetize the asset, and has been allowed to go to the marketplace and freely market the asset, so that the FDIC will receive fair value for the asset, which is what the statute's about. So do you disagree with the district court's determination that the statute would be valid as to statutory restrictions? Once again, I think it depends on the nature of the statutory restriction. I don't think the statute, the CARMEA provision, is capable of distinguishing between statutory restrictions and contractual restrictions, except that, obviously, contractual restrictions raise a due process problem, where a statutory restriction that would be applicable to a party might not raise the same constitutional concerns that we addressed in our briefing. In this case, the FDIC— So what kind of provision in a contract might be subject to D2G? What does this apply to? I think it—well, in this particular case, the participation agreement actually had a provision in it which said that the rights of the participant in the participation agreement could not be transferred without the originating bank's consent. It clearly applies to that contractual provision. With respect to a right of first refusal, I do think that there may be some circumstances where a court could fairly conclude that the right of first refusal would be affected by this statute. For example, if the right of first refusal provided that the holder of the right had a year or two years or five years to accept the tendered offer from the FDIC, effectively that would preclude the FDIC from marketing the agreement or reaching a sale with a third party, and you would have a de facto consent to assignment provision. That approach to the problem of D2G is very similar to the approach actually adopted by this court in the bankruptcy field in the— I'm looking for the case. I'm sorry. It skipped my mind. But where this court did adopt a balancing test with respect to rights of first refusal. There are other circumstances, of course. One is where the sale might involve an integrated transaction where you would have, for example, a piece of equipment on an assembly line that the bank held an interest in and we need to sell the entire assembly line. So the right of first refusal might preclude you from doing that. Another is where there's a statutory bar to the exercise, which were the facts in the ROTC versus the Charleston condominium case where the right in that case attached to a condominium association and the ROTC actually in that case was obligated to sell the condominiums to low-income families rather than to a condominium association. The FDIC simply could not honor the right of first refusal in that case. So there are some circumstances, I think, where you could fairly conclude that a right of first refusal would constitute a de facto prohibition on alienation and you run into a problem, I think, with the statute under those circumstances. Counsel, would you respond to opposing counsel's arguments with respect to the Sharpe case on Waterview? Yes. I think that the quote that the court read to opposing counsel was a quote that I actually had planned to address. The Sharpe case also said, as the court observed, that it agreed with Waterview and the language that the court used in that case, both because the language of the statute does not indicate that Congress intended to preempt such a broad area of state law and because of the potential constitutional problems with so holding. And so, once again, in our view at least, if this court were to reverse the decision below, you would create a circuit split between this circuit and the D.C. circuit in Waterview. And in addition, you would repudiate the rationale that led to the Sharpe decision. But don't we have to look at Sharpe in view of the facts in that case? That was a very limited holding in that case. And the pivotal issue in that case was whether or not the Sharpes were creditors of the bank and the particular transaction that led to the lawsuit was what drove the opinion in that case because the Sharpes had already performed their part of the contractual endeavor and then the bank took their performance and did not complete the performance that was required from the bank. Correct. In the case, what happened was the Sharpes received cashier's checks rather than the wire transfer that the settlement agreement contemplated. After they had already performed their part of the contractual obligation. Correct. And then the cashier's checks were dishonored because, unfortunately, the bank failed while the cashier's checks had not been tendered. And so we held that they were not creditors at that point. They were really parties to a contract that had been partially performed. And so that took them outside the scheme for claims that were filed. Respectfully, I think that in Sharpe, the Sharpes attempted to rescind the settlement agreement. But the court's narrow holding was that the Sharpes couldn't do that because that form of relief was barred by 1821J. Right. So the question became whether or not they were required to get in line in terms of getting relief from the FDIC or whether they were creditors and therefore had to go through the administrative procedure. And the court concluded that they did, that they were creditors and had to. In Sharpe? I believe so, yes. While we're on Ninth Circuit cases, what's your response to your opposing counsel's interpretation of Sawney? Sawney really has two parts to it. One is an 1823J issue, which doesn't seem to be relevant. And the other is the decision regarding the California statute regarding partnerships. And once again, the statute in that case was not a right of first refusal. It was a statute that absolutely precluded the transfer of the partnership interest at issue in that case without the consent of the limited partners. And that was the statute that Mr. Sawney was relying upon in his lawsuit. Because that prohibition was an absolute prohibition and that required consent, I believe that the statute, because of its terms, fell directly within 1821D2G. And therefore, I don't think that the signing decision sheds much light on the question before the court today. Counsel, I'll read to you from page 1156 of Sharpe where we say, we conclude here that the Sharpes were not required to submit their cause of action to the FDIC administrative process because they are not creditors of the FDIC. If that's the language that's in Sharpe, does that change your argument? No, I don't think it does. I mean the- Oh, I thought you said they- The issue here is not whether Bank of Manhattan is a creditor unless you conclude that there's no breach of the contract because of 1821D2G. The question here, so whether Sharpes were or were not creditors, is just, I think, immaterial to the questions that are currently before this court. Well, that was the issue. That's why I was asking you about whether or not it was limited. That was a limited holding because the critical point was they were not creditors and therefore they were kicked out of the administrative scheme that governs creditors. And so, that's a very limited holding as we're looking at this case. They were not covered under the statutory provisions. And so, to me, I'm not sure that it's a good analogy to say that Sharpe covers the situation that we have here today. No, I don't think that the holding in Sharpe is directly applicable to this case. What is directly applicable to this case for Sharpe is the rationale that the court used to arrive at that decision. In adopting the Waterview decision of the D.C. Circuit. In adopting the Waterview opinion and also in observing that Congress couldn't simply repudiate contracts, the quote that the court read to opposing counsel during his argument, yes. Anything further, counsel? Just two points. On two cases that the FDIC relied upon in its brief, the Bank of Boulder and the NCNB Texas case. Both of those cases were purchased in assumption agreements and not liquidations as in the present case. In the present case, of course, the FDIC was engaged in liquidating the assets of First Heritage. The sale in this case occurred approximately six months after the FDIC was appointed as receiver. And all of the policy considerations that are present in a purchase in assumption context are not present here. Further, both cases rely on 1823 to validate the transactions in those cases and not 1821. Thank you. Thank you, counsel. Mr. Watson, you have a little reserve time. Thank you, Your Honor. I'd like to turn right to Sharpe. My friend quoted from Sharpe that in that circumstance, the Sharpe panel found that there was no intent to preempt state law. This court, Insani, said that D2G does exactly that. D2G is intended to preempt state law. And I turn from that to the Norfolk decision because I think it's very on point here. There was a statute designed to promote economy and efficiency in congressionally desired transactions that were overseen by the government. It intended to remove burdens and impediments. The resolution process would be so delayed by a proposed transfer that it would defeat the benefits that were intended by Congress. So Congress passed a broad law that said all other law would fail. And that included, as the Supreme Court found, any obstacle imposed by law, including contracts. And my friend just discussed the difference in the purchase and assumption agreement in the Bank of Boulder case and the particular transaction in this case. But Congress passed one law, and the purpose was to ensure – it wasn't to ensure that the FDIC could handle something that it otherwise couldn't sell or his proposed interpretation of the purpose. Rather, the purpose of the statute was to ensure that the FDIC could efficiently and expeditiously resolve failed institutions. The preferred manner of doing that is the purchase and assumption transaction. It's done overnight under emergency conditions, as Bank of Boulder said. And that's the reason that the FDIC can't individually go through contracts and certainly can't go out and obtain consent or look for rights of first refusal overnight. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and we will hear argument next in Brownfield v. Jaguar Land Rover, North America.
judges: O'SCANNLAIN, RAWLINSON, BYBEE